UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FAYE O.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C22-5032-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) failing to properly evaluate Plaintiff's testimony concerning her limitations; (2) failing to properly assess submitted lay evidence statements; (3) failing to properly consider the medical opinion of Licensed Mental Health Counselor ("LMHC") Rich Dillman; and (4) failing to properly assess her residual functional capacity ("RFC"). (Dkt. # 9 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1965, has at least a high school education, and has previously worked as a retail salesclerk and an inventory control specialist. AR at 30. Plaintiff was last gainfully employed in 2014. *Id.* at 30, 285.

On April 20, 2018, Plaintiff applied for benefits, alleging disability as of December 31, 2014. AR at 16. Plaintiff's application was denied initially on October 2, 2018, and on reconsideration on February 19, 2019, and Plaintiff requested a hearing. *Id*. After the ALJ conducted virtual hearings on March 24, 2020, and April 16, 2021,[1] the ALJ issued a decision finding that during the relevant period of adjudication, from December 31, 2014, Plaintiff's alleged disability onset date, to March 31, 2018, Plaintiff's date last insured, Plaintiff was not disabled and that she could perform work that existed in significant numbers in the national economy. *Id.* at 18, 30-32.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

---

[1] Plaintiff's initial hearing was conducted remotely, but postponed from March 24, 2020, to April 16, 2021, due to technical issues. AR at 49.

ORDER - 2

(cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Discounting Plaintiff's Testimony

Plaintiff contends the ALJ erred in discounting her testimony. (Dkt. # 9 at 11-15.) Specifically, Plaintiff argues that the ALJ failed to contrast and compare evidence that contradicted her testimony with sufficient specificity as to the medical evidence, Plaintiff's activities, and the observations of an agency employee. (*Id.* at 12-13.)

Absent affirmative evidence showing the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At her initial hearing, on March 24, 2020, Plaintiff primarily testified that she was disabled due to her mental impairments. *See* AR at 45; *see also id.* at 18, 276, 309. Plaintiff testified that she struggled with memory loss and retaining

ORDER - 3

knowledge. *Id.* at 45-46. Plaintiff testified that due to her memory problems, she did not go out socially other than to therapist and doctor appointments, and that she primarily relied on her husband to complete household activities. *Id.* at 47. Plaintiff additionally testified that her memory problems had worsened because she began to experience seizures after engaging in electroconvulsive therapy. *Id.* at 48.

At her continued hearing, on April 16, 2021, Plaintiff testified that she suffered from physical ailments, including severe arthritis of her hips and knees that limited her ability to walk, stand, bend, and lift anything more than 15 or 20 pounds, issues with holding items with her hands, and that she was required to frequently change positions. AR at 61-62, 64. Plaintiff testified that she suffered from issues with concentration, migraines, and anxiety and panic attacks that were triggered by social responsibilities, such as leaving the house, meeting someone, or going to work. *Id.* at 61-63. Plaintiff also testified to suffering from debilitating seizures. *Id.* at 64.

In his decision, the ALJ found Plaintiff's allegations not sufficiently supported during the relevant period of adjudication on several bases. AR at 24-27. The ALJ found that Plaintiff's allegations were unreliable due to: (1) Plaintiff's description of her activities of daily living, (2) the objective medical findings, medical history, and treatment history; and (3) because her allegations were inconsistent with observations made by an agency employee during her initial interviews. *Id.* at 24, 27.

Here, the ALJ's decision adequately explained how Plaintiff's activities were at odds with her testimony. First, an ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In his decision, the ALJ discounted Plaintiff's allegations on the basis of her activities because: (1) function

reports filled out around the time of her date last insured reported that she was capable of making simple meals, feeding her dog, going on Facebook, cleaning the kitchen, reading, doing laundry, maintaining her personal care, driving, and grocery shopping; (2) she reported she had attended several concerts and traveled to Las Vegas during the relevant period; (3) she told a clinician she was staying active and enjoyed dancing; (4) she reported traveling to Utah to see her sister, son, and granddaughter; and (5) she reported her medication had made it easier to leave to house than it had ever been before, such that she was now able to go to the grocery store with relative ease. AR at 25-27 (citing *id.* at 298-301, 310-13, 429, 500, 613, 1788). Consequently, the ALJ provided multiple examples of Plaintiff's activities that were inconsistent with her claimed limitations of debilitating physical ailments and inability to engage socially due to her memory and anxiety issues. *See Orn*, 495 F.3d at 639.

Furthermore, the ALJ appropriately discounted Plaintiff's testimony on the basis of the medical record. Though Plaintiff complained of arthritis that limited her ability to perform physical activities, examinations during the relevant period showed normal gait and normal range of motion of the hips "without pain." AR at 25 (citing *id.* at 582, 621). Plaintiff also told her clinicians that medications relieved her physical symptoms (*id.* at 429, 620), and that her mental health medications effectively controlled any psychotic-type symptoms when she remained on them (*id.* at 613, 1743). Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). In addition, the ALJ noted that Plaintiff's longitudinal mental status examinations were unremarkable, showing good mood, normal affect, normal speech, intact insight and judgment, good attention and concentration, good engagement during interviews, and no

ORDER - 5

memory deficits. AR at 25-26 (citing *id.* at 614, 1744, 1750, 1756). As such, the ALJ reasonably interpreted Plaintiff's medical record as inconsistent with her claimed limitations.

Finally, the ALJ did not err in finding that Plaintiff's allegations were inconsistent with observations made by an agency employee during her initial interviews. AR at 27 (citing *id.* at 283). In evaluating the reliability of a claimant's allegations, an ALJ may consider observations made by agency employees. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) ("We will consider any statements in the record noted by agency personnel who previously interviewed the individual . . .The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."). Here, despite Plaintiff's allegations of severe anxiety causing her concentration problems in social settings, agency employees observed that Plaintiff had minimal difficulty understanding, concentrating, and answering questions posed to her. AR at 27 (citing *id.* at 283).

The Court therefore finds that Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's assessment of her testimony.

      **B.**      **The ALJ Did Not Harmfully Err in Assessing the Lay Evidence**

Plaintiff argues the ALJ erred in rejecting lay witness evidence, specifically statements from Plaintiff's husband and sister. (Dkt. # 9 at 8-11.) Plaintiff argues that the ALJ ignored or otherwise failed to provide specific and germane reasons to reject the lay witness statements, and otherwise erred in violating 20 C.F.R. § 404.1513(a)(4) and SSR 16-3p. (*Id.* at 11.) Defendant argues that the ALJ was not required to articulate the persuasiveness of any statements provided by Plaintiff's family members due to the revised regulations. (Dkt. # 10 at 10-11.)

ORDER - 6

Plaintiff's husband and sister both submitted third-party statements detailing their observations of Plaintiff's symptoms and limitations. AR at 267-74, 327-334, 367-70, 390-91. Plaintiff's husband submitted that Plaintiff sometime stayed in bed all day, that she suffered from depression, anxiety, and emotional breaks, that she struggled to interact outside socially on her own, and had issues with her memory, concentration, and recall. *Id.* at 267-74, 327-334, 390-91. Plaintiff's sister submitted that Plaintiff suffered from long-term mental health and anxiety issues, including suicidal behavior and psychotic breaks, that she suffered from trauma related to a surgery she had to reduce her chance of breast cancer after her mother's passing, that she does not engage in her previous social and daily activities, and that she now sleeps for long periods of times. *Id.* at 367-70.

In his decision, the ALJ noted that he considered Plaintiff's family members' submitted statements regarding Plaintiff's capacities. AR at 29. But because Plaintiff's family members' statements constituted evidence from a non-medical source, the ALJ found that any reports contained within regarding Plaintiff's functional abilities did not require articulation under 20 C.F.R. § 404.1520c(d). *Id.*

Under the revised regulations, evidence from nonmedical sources is defined as "any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4). "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted). The Ninth Circuit has historically required an ALJ to give germane reasons for discounting lay witness statements. *Molina*, 674 F.3d at 1111. However, for disability claims filed on or after March 27, 2017, such as this one, the regulations provide that the ALJ is "not required to articulate" how he evaluated

ORDER - 7

evidence from non-medical sources such as lay witnesses using the same standards as for medical sources. *See* 20 C.F.R. § 404.1520c(d). "Consequently, there is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required." *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) (citation and internal quotations omitted).

Here, the regulations do not necessarily permit an ALJ to reject lay witness testimony without providing reasons. Regardless of the type of evidence, an ALJ may not reject "significant probative evidence" without explanation. *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995). This is because the agency must "set forth the reasoning behind its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

Nevertheless, the ALJ's lack of explanation as to how the lay statements were evaluated is harmless because the reasons the ALJ provided to reject Plaintiff's testimony apply equally to Plaintiff's husband's and sister's submitted statements. *See Molina*, 674 F.3d at 1117 (finding harmless error in ALJ's lack of articulation related to lay witness statements); *see also Rochelle S. v. Saul*, 2021 WL 252925, at *3 (W.D. Wash. Jan. 25, 2021) (finding harmless error where ALJ "considered" lay witness's testimony but declined to articulate how it was measured). As noted above, the ALJ appropriately discounted Plaintiff's testimony concerning her limitations related to her mental health impairments, depression, and anxiety based on inconsistencies with her activities, the medical record, and the observations of an agency employee.

Moreover, the ALJ did not err pursuant to SSR 16-3p. SSR 16-3p merely indicates that evidence from non-medical sources is a category of evidence that may be considered. *See* SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) ("Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be

ORDER - 8

helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include . . . non-medical sources such as family and friends . . . ."). However, the regulations further provide that non-medical source evidence is considered under §§ 404.1520b and 404.1520c and evaluated according to the rules pertaining to the relevant category of evidence. 20 C.F.R. § 404.1513(a). The ALJ clearly noted that Plaintiff's family members' submitted statements were considered as appropriate but that they did not require any articulation under 20 C.F.R. § 404.1520c(d). AR at 29. Therefore, the ALJ did not harmfully err in evaluating the provided lay witness statements.

    C.  **The ALJ Did Not Err in Assessing LMHC Dillman's Medical Opinion**

  Plaintiff next argues that the ALJ erred in rejecting the opinion of LMHC Dillman, Plaintiff's treating mental health therapist, because the ALJ failed to specify what objective evidence was inconsistent with LMHC Dillman's opined limitations. (Dkt. # 9 at 6-8.) Under regulations applicable to this case, an ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

  In December 2018, LMHC Dillman completed a mental impairment questionnaire opining Plaintiff suffered from marked to extreme limitations in all work-related mental abilities addressed by the questionnaire. AR at 1257-64. In particular, LMHC Dillman opined that Plaintiff would not be able to maintain regular work attendance or complete a normal workday or workweek due to her impairments. *Id.* at 1259-60. LMHC Dillman further assessed that Plaintiff would be unable to perform, or would perform with noticeable difficulty more than 20% of the

ORDER - 9

workday, several work-related mental activities. *Id.* at 1260-61. LMHC Dillman concluded that all of Plaintiff's symptoms were present since 2014, but that her memory issues had worsened throughout 2018, and that her suicidal ideation had increased. *Id.* at 1263.

The ALJ found LMHC Dillman's opinions unpersuasive as to Plaintiff's relevant period of review because they were not supported by nor consistent with the objective record.[2] AR at 29. Specifically, the ALJ noted that during the relevant period Plaintiff reported doing well on her medications, and that her mental status exams were consistently within normal limits, except for occasional bouts of depressed mood and affect that occurred when Plaintiff lessened her medication. *Id.* (citing *id.* at 566, 581-82, 592, 602, 605, 609, 613-14). The ALJ noted Plaintiff suffered one psychiatric hospitalization during the relevant period—in March 2018—but specified it was in the context of a situational stressor concerning her sister undergoing skin cancer surgery while Plaintiff was not treating with Risperdal. *Id.* (citing *id.* at 534-37). Once Plaintiff treated with Risperdal again, she reported improvement in her mood, suicidal ideation, and mental functioning. *Id.* (citing *id.* at 503, 1788). Finally, the ALJ observed that Plaintiff's reports of doing simple and multi-step housing tasks on a regular basis did not support LMHC Dillman's finding of marked to extreme limitations during the relevant period. *Id.* (citing *id.* at 295-316).

Contrary to Plaintiff's argument, the ALJ explicitly compared LMHC Dillman's opinion with other parts of the record, namely Plaintiff's medical record and reports of her activities, and determined the evidence was at odds with LMHC's Dillman's finding of marked to extreme limitations. *See* AR at 29. This comparison satisfies the ALJ's obligation to consider how supported and consistent LMHC's Dillman's opinion is with the medical record and Plaintiff's

---

[2] The ALJ noted that LMHC Dillman's opinions was potentially supported by Plaintiff's later medical record demonstrating mental deterioration, but that such record postdated the relevant period. AR at 29.

ORDER - 10

activities. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (conflict between opinion and claimant's activity level is proper basis for rejecting opinion). Furthermore, the ALJ cited substantial evidence to support his interpretation. *See* AR at 29 (citing *id*. at 295-316, 503, 534-37, 566, 581-82, 592, 602, 605, 609, 613-14, 1788).

Because the ALJ's inconsistency finding sufficiently explains why the ALJ found LMHC Dillman's opinion unpersuasive, the Court finds no basis to disturb the ALJ's assessment of this opinion. *See Woods*, 32 F.4th at 791-92, 793 n.4 (finding that valid finding of inconsistency is sufficient to affirm ALJ's discounting of medical opinion). Plaintiff has not shown that the ALJ's characterization of the record is inaccurate or unreasonable, and thus, failed to meet her burden to show error in the ALJ's assessment of LMHC Dillman's opinion.

### D. The ALJ Did Not Err in Assessing Plaintiff's RFC

Finally, Plaintiff argues that the ALJ failed to include all of the limitations opined by Disability Determination Staff Psychologist Jan L. Lewis and psychiatrist Eugene Kester in her RFC, and that the RFC is therefore defective. (Dkt. # 9 at 3-6.) In his decision, the ALJ found that Plaintiff had the RFC to perform light work. AR at 23. Relevant to this issue, the ALJ's RFC found that Plaintiff was limited to simple, repetitive, routine tasks with no more than brief, superficial contact with the general public. *Id.*

Plaintiff contends that the RFC failed to fully capture the limitations opined by the State agency reviewing psychological consultants, who both found that Plaintiff was best suited for superficial contact with the public in a non-confrontational setting. (Dkt. # 9 at 3-4 (citing AR at 86-87, 106-07).) The ALJ found these opined limitations persuasive. AR at 28. Consequently,

ORDER - 11

1   Plaintiff argues that the ALJ's omission of a non-confrontational setting was error. (Dkt. # 9 at
2   4.) "The ALJ is responsible for translating and incorporating clinical findings into a succinct
3   RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). However, an
4   ALJ's RFC finding need only be "consistent" with a doctor's assessed limitations, and not
5   necessarily identical. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).
6   Though not an identical finding, the ALJ translated the State agency reviewing psychological
7   consultants' opinions that Plaintiff required a non-confrontational setting into Plaintiff's RFC by
8   limiting her to simple, repetitive, and routine tasks with no more than brief superficial contact
9   with the general public. AR at 23. Plaintiff otherwise fails to demonstrate how these RFC
10  limitations are not consistent with a limitation to non-confrontational settings. (*See* dkt. # 9 at 4.)
11          Plaintiff additionally argues that the ALJ erred by not incorporating other portions of
12  State agency reviewing psychological consultants' findings into Plaintiff's RFC, specifically that
13  she will have a higher absenteeism rate and will struggle to adapt to more than occasional and
14  simple work changes. (Dkt. # 9 at 5-6 (citing AR at 86-87, 107).) But an ALJ is not required to
15  incorporate assessed limitations in an RFC that were properly discounted. *See Batson v. Comm'r*
16  *of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding the ALJ was not required to
17  incorporate evidence from opinions which were permissibly discounted). Though the ALJ found
18  that some of Plaintiff's assessed limitations by the State agency reviewing psychological
19  consultants were supported by the medical record, the ALJ found that other opined limitations—
20  that she would struggle to adapt to more than occasional and simple work changes and have a
21  higher absenteeism rate—were not fully supported or consistent with the evidence. AR at 28-29.
22  Specifically, the ALJ cited to Plaintiff's longitudinal mental status examinations, improvement
23  of her mental health impairments with medication, and her activities (*id.* at 613-14, 1743-44,

1750, 1756), which as considered above, was substantial evidence for finding that the opined limitations were not supported or consistent with the evidence in the record. *See Woods*, 32 F.4th at 791-92, 793 n.4.

Accordingly, the ALJ did not err in failing the State agency reviewing psychological consultants opined limitations in Plaintiff's RFC.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 1st day of July, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge